Katrina Van Oss v. Commissioner. Murray M. Salzberg v. Commissioner.
Van Oss v. Commissioner
Docket Nos. 3945-63, 2880-64.
United States Tax Court
T.C. Memo 1966-72; 1966 Tax Ct. Memo LEXIS 209; 25 T.C.M. (CCH) 403; T.C.M. (RIA) 66072; April 7, 1966
*209 Held: The total of the amounts paid by petitioner Salzberg to his divorced wife, petitioner Van Oss, pursuant to a divorce settlement agreement, was alimony taxable to Van Oss and deductible by Salzberg. The settlement agreement did not specifically designate or "fix" any portion of such payments as child support within the meaning of section 71(b), I.R.C. 1954. Commissioner v. Lester, 366 U.S. 299 (1961), controls. Louis Mandel and Arthur A. Anderman, 1501 Broadway, New York, N. Y., for the petitioner in Docket No. 3945-63. Jacob I. Goodstein and Benjamin Wm. Mehlman, for the petitioner in Docket No. 2880-64. Stephen M. Miller and Joel Kamens, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in petitioners' income tax as follows: Dkt.
No.
Petitioner
1958
1959
3945-63
Katrina Van Oss
$ 3,540.13
$ 4,621.67
2880-64
Murray M. Salz-
berg
11,932.17
11,273.44
The only issue for our decision in these consolidated cases is whether certain paycents made by petitioner Salzberg to petitioner Van Oss during the years in question are includable in their entirety in the gross income of the latter as alimony or whether petitioner Van Oss correctly excluded a portion of said payments from her gross income as child-support payments. The deductibility *211 of the subject payments by petitioner Salzberg is solely dependent upon our determination of the extent to which they constituted alimony income to petitioner Van Oss. [1]
Findings of Fact The stipulated documents and orally stipulated facts are incorporated herein by this reference. Petitioners Katrina Van Oss and Murray M. Salzberg each duly filed Federal income tax returns for their respective taxable years 1958 and 1959, Van Oss with the district director of internal revenue, Brooklyn, New York, and Salzberg with the district director of internal revenue, New York, New York. Van Oss and Salzberg were married on February 1, 1951. There are three children of the marriage: Harry and Hedie, both born January 17, 1952, and Dana, born January 19, 1955. On January 15, 1958, Van Oss and Salzberg entered into a separation agreement. The two were subsequently divorced on January 24, 1958, and the separation agreement was incorporated in the decree of divorce by reference. The pertinent provisions of the separation agreement applicable to the issue involved *212 herein are as follows: * * *
13. a. The Husband shall pay to the Wife as alimony the sum of $24,000.00 per year until July 15, 1973, at which time the alimony will be reduced to $16,000.00 per year. On February 1, 1976, the alimony shall be further reduced to $12,000.00 per year. [There is here included a provision for adjusting the payments to conform to advances in the cost of living.] The Wife will defray all costs and expenses necessary to support, maintain, care for and educate the children. b. It is contemplated that the Wife shall support the children in a fair and proper manner and see to their proper care and upbringing. If they attend private schools and at the request of the Husband they will be sent to private schools, and the tuition exceeds $1,000.00 per year per child, the Husband will reimburse the Wife for any excess, providing they go to such private schools as he designates or agrees upon with the Wife. In the event that the children attend a boarding school where they receive board and meals, and the cost of such boarding schools, including tuition and board exceeds $1,250.00 per year per child, the Husband will reimburse the Wife for the amount of such *213 difference, providing they go to such boarding school as he designates or agrees upon with the Wife. In the event the children attend a private school the parents will confer for the purpose of trying to agree upon a school which is best suited for the children and to their best interests. c. The WIFE WILL PAY THE COST OF ANY EXPENSES INCIDENTAL TO THE USUAL CARE OF THE CHILDREN, INCLUDING ORDINARY DENTAL AND MEDICAL CARE. In the event that extraordinary dental care is required, such as orthodontia, or in the event of illness which requires special care, such as surgery or hospitalization, the Husband will reimburse the Wife for the cost of such illness. The Wife will pay the cost of the ordinary illnesses to which children ordinarily are subjected. * * *
17. In the event that the parties be divorced and the Wife should remarry within ten years after the making of this agreement, the Husband shall have sole custody of the children, but the Wife shall have all the rights of visitation of the children now given by this agreement to the Husband, and all payments hereunder provided to be made to the Wife shall cease and determine. If the Wife should remarry after ten years from *214 the date of this agreement, it shall have no effect upon the custody of the children. In the event that the Wife shall remarry and retain custody of the children, the amount to be paid by the Husband to the Wife shall be limited to the sum of $12,000.00 annually for the care, custody and education of the children. On July 15, 1973, this amount will be reduced to $4,000.00 per year, and on February 1, 1976, such payments shall cease. In the event that the Husband shall remarry before the Wife, the subsequent marriage of the Wife shall have no effect on the custody of the children. * * *
20. The Wife recognizes and acknowledges that the foregoing provisions for her benefit are satisfactory and that they are reasonable and adequate for her support and maintenance, past, present and future, and in keeping with her accustomed mode of living, reasonable requirements and station in life. * * *
In accordance with the above provisions of the separation agreement, which were incorporated into the divorce decree, Salzberg made regular payments to Van Oss during the years here in issue. On her tax returns for the years 1958 and 1959, Van Oss reported alimony income of $11,500 and *215 $12,000, respectively. In his tax returns for the years 1958 and 1959, Salzberg deducted as alimony the amounts of $22,000 and $26,100, respectively. Respondent has disallowed these deductions to the extent of $11,000 for 1958, and $14,100 for 1959. Respondent also determined that Van Oss had understated alimony income by $11,500 in 1958, and $14,100 in 1959. At trial it was stipulated that for 1959 the amount paid by Salzberg to Van Oss was $24,000 not $26,100, and that, therefore, his deduction for that year should be reduced accordingly and the understated alimony income of Van Oss should only be $12,000. Opinion Van Oss contends that $11,500 of the 1958 payments and $12,000 of the 1959 payments represented nontaxable child-support payments. On the other hand, Salzberg contends that such payments (with the exception noted in footnote 1 above) in each of the years represented alimony and are therefore fully deductible by him. Respondent has taken a protective position between the parties, determining as to petitioner Van Oss that the payments in question were taxable as alimony and as to petitioner Salzberg that the payments in question were nondeductible child-support payments. *216 On brief, however, respondent has taken the position in agreement with petitioner Salzberg that no portion of the amounts in question represented child-support payments. Alimony payments are includable in gross income by recipients thereof under section 71(a) of the 1954 Code. Payments to a divorced spouse are deductible by the taxpayer making such payments only if the amounts paid are includable as alimony in the gross income of the recipient. Section 215(a), Internal Revenue Code of 1954. Section 71(b) of the Code provides in pertinent part as follows: (b) Payments to Support Minor Children. - Subsection (a) [which includes in gross income payments received pursuant to a divorce decree or separation agreement] shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. * * *
Section 71(b) requires that the operative instrument must specify or "fix" a sum certain or percentage of the payment for child support before any of the payment may be excluded from the former wife's *217 income. The separation agreement in the instant case does not so specify or fix any amount or percentage as child support. Petitioner Van Oss argues, however, that although the payments were not specifically broken down as to designation in the separation agreement, nonetheless, an examination of the provisions of the agreement makes such a breakdown apparent by irrebuttable inference. Initially, Van Oss was to receive $24,000 annually. This was to be reduced by $12,000 if she subsequently remarried. It was to be reduced by $4,000 shortly after each child reached age 21. We agree with petitioner Van Oss that these provisions create a strong inference that of the total $24,000 annual payments, the $12,000 which was to be cut off upon remarriage was intended as alimony, and the $12,000 which was to be cut off ratably as the children reached age 21 was intended as child support. Just such an approach to the application of section 71(b) was urged upon the Supreme Court in Commissioner v. Lester, 366 U.S. 299 (1961), and was clearly rejected. Petitioner Van Oss argues that the Lester case is distinguishable from the instant situation since the agreement in that case not *218 only provided for cut-off of portions of the payments as the children reached majority (or were married or died) but also for cut-off of all payments (even during minority of children) if the wife remarried, the latter provision being inconsistent with the inference that a portion of the payments was for child support. Van Oss argues here the amount the husband is required to pay after the wife's remarriage fixes the amount of child support. It is urged that the conflict in inferences in Lester produced an uncertainty which was the basis for the Lester decision, but that no such uncertainty is present in the instant case. It appears clear to us that the decision in Lester is not based on the inability to draw conclusive inferences from the operative agreement there involved, but rather upon the broader underlying principle that in no case can an allocation to child support be fixed by inference - no matter how impelling such an inference might appear. [2] The statutory scheme in this area requires strict literal compliance. *219 Our interpretation of Lester, as establishing a strict rule, is supported by the majority opinion in that case holding that child support payments must be "specifically designated," and also by Justice Douglas' concurring opinion (366 U.S. at 306, 307): I agree with the Court that this agreement did not "fix" any such amount. To be sure, an amount payable in support of minor children may be inferred from the proviso that one-sixth of the payment shall no longer be due, if the children marry, become emancipated, or die. But Congress in enacting this law realized that some portion of alimony taxable to the wife might be used for support of the children, as the opinion of the Court makes clear. The present agreement makes no specific designation of the portion that is intended for the support of the children. It is not enough to say that the sum can be computed. Congress drew a clear line when it used the word "fix." * * * Petitioner Van Oss refers to paragraph 13. b. of the separation agreement, which provides that if the children attend private school, Salzberg will reimburse Van Oss for tuition costs in excess of $1,000 per year per child. She contends that this *220 provision fixes a sum certain allocable to child support of $3,000 per year, and that to the extent of $3,000 per year she was a mere conduit for payments from Salzberg to the children, citing Emmons v. Commissioner, 311 F. 2d 223 (C.A. 6, 1963), affirming 36 T.C. 728 (1961). We find the Emmons case completely distinguishable. As petitioner Van Oss points out, the court in Emmons held that as to the $5,000 portion of the payments designated for the benefit of the daughters, the wife had no control and got no personal benefit. She was obligated specifically under a supplemental agreement to expend this sum for her two daughters, or to place any unexpended balance each year in a savings account in the daughters' names. Quite to the contrary here! Van Oss had complete control and beneficial use of all monies received from Salzberg, and she was in no sense a conduit for payment of any specifically fixed sums from Salzberg to the children, nor was she bound to spend a specified amount for the children or remit the unexpended balance to them as in Emmons. We hold that all of the payments here in controversy were alimony payments within the meaning of sections *221 71 and 215[3] Of the 1959 payments claimed by Salzberg in his return but conceded at trial, $2,100 was not income to Van Oss and not deductible by Salzberg. Decisions will be entered under Rule 50. Footnotes
1. Petitioner Salzberg conceded at trial that $2,100 of the total $26,100 deduction claimed for 1959 is not deductible.↩
2. We note that in fact the provisions of the agreement in the instant case are not conclusive of but one permissible inference (that $12,000 of the $24,000 annual payments was for child support) as petitioner Van Oss urges in distinguishing her case from Lester. While the provision here for partial cut-off of payments as children reach age 21 does create the inference that the portions subject to cut-off in this way were intended as child support, the absence of a provision cutting off payments in the same manner if a minor child should die or marry tends to create a contrary inference - just as the complete cut-off upon remarriage of the wife during minority of the children created a contrary inference in Lester.↩
3. For the year 1958, Salzberg deducted only $22,000, as alimony. Van Oss reported $11,500, as alimony income, and in his notice of deficiency respondent increased alimony income by another $11,500, determining in effect that Van Oss received $23,500 (or $1,000 more than the amount deducted by Salzberg). Although the record indicates that the 1958 payments were less than the annual $24,000 provided in the agreement because the agreement did not take effect until January 15, the discrepancy between the $23,000 and $22,000 figures is not explained. Since the taxpayer must prove error in a determination made in a notice of deficiency, it was incumbent upon Van Oss to prove that total payments received were less than $23,000 if that was in fact the case. Van Oss not having attempted such proof, we must sustain the determination as made in the notice of deficiency as to the year 1958.↩